**Jeffrey W. LEE, Sr., Plaintiff,**

v.

**EXXON COMPANY, U.S.A., Defendant.**

**Civ. A. No. 4:93–1568–22.**

United States District Court,
D. South Carolina,
Florence Division.

Nov. 15, 1994.

Stephen Jahue Moore, West Columbia, SC, for plaintiff.

Richard Ashby Farrier, Jr., Charleston, SC, Steven A. McKelvey, Jr., S. Keith Hutto, Columbia, SC, for defendant.

## ORDER

CURRIE, District Judge.

This is an action brought by a former Exxon franchisee under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* Jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331. The matter is before the court on Exxon's Motion for Summary Judgment.

The court heard oral argument on September 1, 1994, and has reviewed the briefs and

---

applicable law. For the reasons below, the court grants Exxon's Motion for Summary Judgment.

## FACTS

The following facts are drawn from the complete record before the court including the pleadings, briefs, discovery materials, and affidavits. All factual inferences have been drawn in Plaintiff's favor.

Prior to September 1992 Exxon owned several service stations in Florence, South Carolina. For a number of years, Exxon leased one station, located at 1901 West Lucas Street, to Plaintiff. As part of an area-wide decision to curtail its ownership of stations in certain areas, and to convert those stations into a distributor-supplied retail network, Exxon decided to sell the property leased by Plaintiff.

By letter dated November 18, 1991, Exxon notified Plaintiff that it had decided to sell the site, and that it would not renew the franchise relationship beyond the September 1, 1992, expiration. (Def's Exh. 1, Memo in Support of Summary Judgment). This letter also informed Plaintiff that he would have an opportunity to purchase the site under terms and conditions to be sent to him within ninety days. The notice was in writing, stated the intent and grounds for non-renewal, specified the effective date of non-renewal, included a copy of the Department of Energy's PMPA Summary, and was sent certified mail.

Thereafter Exxon solicited bids from potential purchasers. The highest bid was from R & H Maxxon, Inc. for $760,000 ($635,000 for land and building/$125,000 for equipment, excluding tanks and lines, which the bidder would purchase upon Exxon's approval at an additional cost of $90,000). (Def's Exh. 2, Memo in Support of Summary Judgment). On February 11, 1992, Exxon advised Plaintiff of R & H Maxxon's bid, and extended to him a right of first refusal to purchase the station site under the same terms. (Def's Exh. 3, Memo in Support of Summary Judgment).

On April 9, 1992, Plaintiff submitted a letter of intent and offer of purchase, which matched the terms contained in R & H Maxxon's offer, with the exception that Plaintiff's offer did not include purchase of the tanks and lines. (Def's Exh. 4, Memo in Support of Summary Judgment). Exxon wrote Plaintiff another letter on April 21, 1992, in which it allowed Plaintiff a second opportunity to match the exact terms of R & H Maxxon's offer, which included the offer to purchase the tanks and lines. (Def's Exh. 5, Memo in Support of Summary Judgment).

Plaintiff agreed to purchase according to the terms of the R & H Maxxon bid, and Exxon deeded Plaintiff the real property for $635,000 on September 1, 1992. (Def's Exh. 6, Memo in Support of Summary Judgment). By Bill of Sale dated the same day, Exxon transferred the personal property for $215,-000. (Def's Exh. 7, Memo in Support of Summary Judgment). Since becoming owner of the site September 1, 1992, Plaintiff has operated as an Exxon dealer through an independent Exxon distributor.

Plaintiff's Complaint, filed June 28, 1993, alleges that Exxon violated provisions of the Petroleum Marketing Practices Act in effecting the non-renewal. Specifically, Plaintiff alleges the cited reason for non-renewal "was a sham" (Complaint, Para. 13), that Exxon's decision to sell the station was not in the normal course of business, that the offer to sell was made in bad faith and discriminatory, and intended to unjustly enrich Exxon at the expense of Plaintiff. The gravamen of Plaintiff's claim is that after exercising his right of matching the third party bid and purchasing the site, Plaintiff paid too much. Plaintiff's prayer seeks actual and punitive damages, as well as attorneys fees and costs. Exxon denies the material allegations of the Complaint, and asserts that it acted in good faith and in the normal course of business.

## STANDARD ON SUMMARY JUDGMENT MOTION

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,

82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The non-moving party, here Plaintiff, must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## ANALYSIS

Exxon moves for summary judgment on the grounds that the undisputed facts show that its non-renewal of Plaintiff's lease and its sale of the property to Plaintiff were undertaken in good faith in the normal course of business and that, accordingly, it complied with all applicable provisions of the PMPA.

Plaintiff's opposition centers on two arguments. First, Plaintiff argues that the non-renewal was somehow invalid under the PMPA because the decision to sell the station was part of an area-wide decision to shift to a distributor-served market. Second, Plaintiff argues that the terms of the sale were unfair in that he was forced to purchase the goodwill of the business he had built up and which belonged to him. Plaintiff concludes, therefore, that summary judgment must be denied because there is a material disputed fact as to the good faith of Exxon.[1]

Section 2802(b) of the PMPA sets forth permissible reasons for the termination or non-renewal of franchises. Non-renewal must be based on a ground specified in section 2802(b)(2) or section 2802(b)(3). 15 U.S.C. § 2802(b)(1)(B). A franchisor is entitled not to renew a franchise relationship where it has determined in good faith and in the normal course of business to sell the service station premises, provided that:

(iii) in the case of leased marketing premises such franchisor, during the 90–day period after notification was given pursuant to section 2804 of this title, either—

(I) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or

(II) if applicable, offered the franchisee a right of first refusal of at least 45–days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

15 U.S.C. § 2802(b)(3)(D)(iii).

In a recent case, *Keener v. Exxon Company, U.S.A.,* 32 F.3d 127 (4th Cir.1994), the Fourth Circuit Court of Appeals reviewed the propriety under the PMPA of Exxon's non-renewal of a franchise and offer to sell a station at the same price bid by a third party, pursuant to 15 U.S.C. § 2802(b)(3)(D)(iii). In *Keener,* the franchisee had operated a station in West Virginia which Exxon decided to sell as part of its plan to phase out the use of dealer-operated stations and convert to distributor-owned sites. As it did in the present case, Exxon notified Keener of a third party bid and gave Keener a right of first refusal. Although Keener chose not to match the third party bid, he protested the terms of the offer and filed suit seeking sale of the property at its fair market value. The district court granted summary judgment for Exxon, which was affirmed by the Fourth Circuit.

Keener argued that Exxon had not made a valid offer under the PMPA to him because the third party offer included a promise by Exxon to supply the third party with a supply of gasoline, which he was not offered. Thus, he claimed he was not offered the same terms as the third party offer. In rejecting his argument and finding that Keener could have availed himself of an opportunity to assure a similar allotment of gasoline from Exxon, the Court emphasized that evidence that the franchisor offered the franchisee the station at the same price of-

---

1. As Plaintiff's brief argues it, "[a]llowing Exxon to set *unreasonable conditions* and set offering prices at unrealistic levels would deny dealers the right to purchase or force them to pay not only the value of the real estate, but allow the oil company to appropriate the dealers' goodwill in derogation of Congressional intent." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 21 (emphasis in original).

fered by a third party creates a strong presumption of statutory compliance.[2] Thus, the Court held that Keener's assertions failed to raise a triable issue of fact as to Exxon's compliance with the right of first refusal provision of the PMPA.

In the present case, Exxon made an informed business decision, resulting from a marketing study in November 1987, that it would convert all direct-supplied retail sites to distributor-supplied retail sites within the "Group 5" market, which includes the Florence, South Carolina area. Aff. of Renfro, Para. 6. Exxon's Downstream Planning and Analysis Department recommended this conversion plan to Exxon's Management Committee in September 1989, and the Management Committee "adopted that recommendation in good faith and in the ordinary course of business in September 1989." *Id.* at Para. 8. Exxon's Vice President of Marketing, Thomson, made the specific decision to sell the subject site based on the value of the property, in accordance with Exxon's ordinary procedures for non-renewal. *Id.* at Para. 11.

Plaintiff suggests that Exxon's decision to terminate direct-supplied retail sites in the area is somehow invalid under the PMPA. The court disagrees and finds that this is precisely the type of business decision with which the PMPA was not intended to interfere. As the court in *Keener* observed,

Congress understood that an industry driven by national and international market forces faces rapidly changing conditions. Such market uncertainties underscore the need for the petroleum industry to retain maximum economic efficiency in all areas, including the delivery of gasoline to individual consumers. *See* 1978 U.S.C.C.A.N. at 877 (noting the importance of preserving franchisor ability to respond to "changing market conditions").

32 F.3d at 130. *See also Hinkleman v. Shell Oil Co.,* 962 F.2d 372 (4th Cir.1992); *Jimenez v. B.P. Oil, Inc.,* 853 F.2d 268 (4th Cir.1988).

Second, Plaintiff argues the sale must be reformed because Exxon somehow sold goodwill belonging to him. However, Plaintiff has failed to provide any evidence to support his claim that goodwill attached to the sale of the premises. Second, Plaintiff's "goodwill" theory is not a recognized basis to vitiate or reform the sale to him. Congress has, through the PMPA, declared that where a franchisor follows the provisions of the PMPA, the franchisor may terminate or nonrenew a franchise without incurring any liability to the franchisee, including any payments for loss of alleged goodwill. As the Fourth Circuit recognized in *Keener* and *Hinkleman,* the proper scope of a court's inquiry under the PMPA is solely to determine compliance with the statute's express provisions. Further inquiry into the facts and circumstances is foreclosed.

Here, the evidence is undisputed that Exxon exercised its rights to sell the station under the PMPA based on a good faith business decision in the normal course of business. The evidence is equally undisputed that its written offer and subsequent correspondence complied with the requirements of 15 U.S.C. § 2802(b)(3)(D)(iii). The offer which Plaintiff accepted was the same offer extended to Exxon by a third party operating under normal market forces. As the *Keener* court observed, "An actual price, agreed to by a willing buyer and a willing seller, is the most accurate gauge of the value the market places on a good. Until such an exchange occurs, the market value of an item is necessarily speculative." *Keener,* 32 F.3d at 132 (citations omitted).

Plaintiff has failed to come forward with evidence sufficient to overcome the statutory presumption as to the propriety of this transaction. Accordingly, the court finds that no material issue of fact exists as to Exxon's compliance with the terms of the PMPA in conducting this sale. Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

---

**2.** Moreover, this presumption "comports with the desire not to transform a simple statutory requirement into a complex and cumbersome one necessitating a detailed economic analysis of private sector decisions." *Keener,* 32 F.3d at 131 (citations omitted).